UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-660

| | | |
|---|---|---|
| **ROBERT M. LIESMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **AMY F. WEISBERG,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the defendant's Motion to Dismiss for Lack of

Jurisdiction and Alternative Motion to Change Venue (#11). Having considered the Motions and

the pleadings in this matter, the court enters the following Order.

## I. BACKGROUND

This is a defamation dispute case arising out of custody litigation occurring in Mecklenburg

County, North Carolina. Plaintiff, a resident of North Carolina, contends that defendant, a resident

of Virginia, defamed him by making slanderous statements to the parties' 13-year-old minor

child's pediatrician and psychologist in Northern Virginia. On November 10, 2017, defendant filed

notice to remove the case to this court based on diversity jurisdiction. In his Amended Complaint

(#9), plaintiff asks the court to resolve the dispute in plaintiff's home district. In the instant Motion

(#11), defendant asks the court to dismiss the action for a lack of jurisdiction, or in the alternative,

transfer this matter to an appropriate district court in Virginia. Id.

## I. STANDARDS OF REVIEW

### A. Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal where the

court lacks personal jurisdiction over a particular defendant. The standard for deciding a motion based on Rule 12(b)(2) was set forth by the Fourth Circuit Court of Appeals in <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence.

When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. <u>Id.</u> When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiffs' "to make a mere prima facie showing of jurisdiction to survive the jurisdictional challenge." <u>Clark v. Milam</u>, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the prima facie showing. <u>Combs</u>, 886 F.2d at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and must draw the most favorable inferences for the existence of jurisdiction. <u>Id.</u>; <u>see also</u> <u>Thomas v. Centennial Commc'ns Corp.</u>, 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006).

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." <u>Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003). Since North Carolina's long-arm statute extends jurisdiction to the outer limits of due process, the jurisdictional analysis merges into a single due process inquiry. <u>Thomas</u>, 2006 WL 6151153, at *2.

### i. General Jurisdiction

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a nonresident defendant if the defendant has contacts with a state that are so "continuous and systematic" as to render them "essentially at home in the forum." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

### i. Specific Jurisdiction

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant where the cause of action arises out of defendant's activities in the forum state. Id. (holding that a forum state may assert specific jurisdiction over a claim where there is an "affiliatio[n] between the forum state and the underlying controversy"). In analyzing specific jurisdiction over a defendant, courts consider whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober v. Mako Products, Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citation omitted).

A defendant purposely establishes "minimum contacts" in the forum state either by deliberately engaging in significant activities or by creating continuing obligations such that she has "availed [herself] of the privilege of conducting business there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Int'l Shoe Co., 326 U.S. at 316. These acts must be "such that [a defendant] should reasonably anticipate being hauled into court [in the forum state]."

World-Wide Volkswagen Corp. v. Woodson, 444, U.S. 286, 297 (1980). Plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to defendant to show that such assertion is unreasonable and unfair. Id.

### B. Subject Matter Jurisdiction

As a threshold matter, the court must determine whether it has subject matter jurisdiction to adjudicate Plaintiffs' claims. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Subject matter jurisdiction involves "[j]urisdiction over the nature of the case and the type of relief sought." In the Matter of T.R.P., 360 N.C. 588, 590 (2006) (citing Black's Law Dictionary, 856 (7th ed. 1999)). In the absence of such jurisdiction, the court has no power to decide a case.

The primary sources of the subject-matter jurisdiction of federal courts include diversity jurisdiction and federal question jurisdiction. See 28 U.S.C. § 1331, 1332(a). 28 U.S.C.A. § 1332(a), which pertains to diversity jurisdiction, provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between: (1) citizens of different states; (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States."

Diversity jurisdiction is determined based on the state of the pleadings at the time of removal. A plaintiff may not defeat diversity jurisdiction by filing a post-removal amendment

which reduces the amount of damages requested by the complaint below the amount in controversy required by 28 U.S.C. § 1332(a). <u>Saint Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 294 (1938). The Third and Fifth Circuits, as well as district courts within the Fourth Circuit, have held that plaintiffs in removal actions may clarify the damages sought when state pleading requirements did not permit him to do so in the original complaint. <u>See</u> <u>Angus v. Shiley, Inc.</u>, 989 F.2d 142, 145 n. 3 (3d Cir. 1993); <u>Asociacion Nacional v. Dow Quimica</u>, 988 F.2d 559, 565 (5th Cir. 1993); <u>Griffin v. Holmes</u>, 843 F. Supp. 81 (E.D.N.C. 1993). However, the Fourth Circuit has not specifically addressed this issue. <u>See</u> <u>Woodward v. Newcourt Commer. Fin. Corp.</u>, 60 F.Supp.2d 530, 532 (D.S.C. 1999).

Where federal subject matter jurisdiction is at issue, the burden of establishing diversity jurisdiction rests with the party seeking to preserve removal. <u>Mulcahey v. Columbia Organic Chems. Co. Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994). The burden thus rests on defendant to prove that diversity jurisdiction exists. <u>Id.</u>

**C. Change of Venue**

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." <u>Id.</u> For a motion to transfer, a movant's burden is heavy. <u>Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.</u>, 719 F.Supp. 446, 451 (W.D.N.C. 1989). A court's decision to grant a motion to transfer venue under 28 U.S.C. § 1404(a) is largely discretionary. <u>3A Composites USA, Inc. v. United Indus., Inc.</u>, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014) (<u>citing</u> <u>Landers v. Dawson Const. Plant Ltd.</u>, 201 F.3d 436 (4th Cir. 1999)). Factors to consider include:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;

     3. The relative ease of access of proof;

     4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

     5. The possibility of a view by the jury;

     6. The enforceability of a judgment, if obtained;

     7. The relative advantages and obstacles to a fair trial;

     8. Other practical problems that make a trial easy, expeditious, and inexpensive;

     9. The administrative difficulties of court congestion;

     10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with state law that must govern the action; and

     11. The avoidance of unnecessary problems with conflict of laws.

Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F.Supp. 93, 96 (W.D.N.C. 1990) (citation omitted).

     The court must exercise its own discretion and apply a balancing test in deciding whether transfer is appropriate. Id. "The above factors fall into three categories: (1) factors that favor neither party, (2) factors that favor Defendant, and (3) factors that favor Plaintiff." Cohen v. ZL Technologies, Inc., 2015 WL 93732, at *2 (W.D.N.C. Jan. 7, 2015) (citing Crockett, 751 F. Supp. at 98). The court must analyze the eleven factors based on quality, not just quantity. Id. (citing Crockett, 751 F. Supp. at 96). In most cases, the plaintiff's choice of forum should be given significant weight, and should not be disturbed unless the balance is strongly in favor of transfer. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

### III.    DISCUSSION

     The court is asked to make several determinations:

1. Whether the court may properly exercise personal jurisdiction over Weisberg;

2. Whether the court may properly exercise subject matter jurisdiction over Weisberg; and

3. Whether the action should be transferred to another judicial district in the interests of justice and for the convenience of the parties, pursuant to § 1404.

The court will consider each question *seriatim*.

## A. Personal Jurisdiction

In order to determine whether this court has personal jurisdiction over a nonresident defendant, the court must apply a two-step test. First, "the transaction must fall within the language of the State's 'long-arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." Wells Fargo Bank, N.A. v. Affiliated FM Ins. Co., 193 N.C. App. 35, 39 (2008) (quoting Tom Togs, Inc. v. Ben Elias Indus. Corp., 318 N.C. 361, 364 (1986)). To prove that the alleged transaction meets the first condition, plaintiff argues that defendant's conduct falls under N.C. Gen. Stat. 1-75.4 (1)(d) of North Carolina's "Long Arm Statute," which requires that defendant be engaged in "substantial activity within [North Carolina] . . . when service of process is made upon such party." See N.C. Gen Stat. 1-75.4 (1)(d). Specifically, plaintiff argues that defendant's ongoing custody litigation in North Carolina, in addition to defendant's repeated trips to North Carolina to visit family and friends, are evidence of defendant's engagement of substantial activity within the state.

The court agrees with plaintiff that defendant's ongoing custody litigation in North Carolina represents "substantial activity" and thus falls under activity covered by the state's "Long Arm Statute." The court is mindful that the defendant is unable to move the matter to another state because of North Carolina's compliance with the Uniform Custody Jurisdiction Act, N.C. Gen Stat. 50A-10; however, defendant's inability to legally move the dispute to another jurisdiction does not necessarily mean that the conduct itself is incapable of being considered evidence of "substantial activity" that places her within the jurisdictional purview of the state. As such, the court finds that defendant is subject to North Carolina jurisdiction under the "Long Arm Statute."

Additionally, plaintiff alleges that defendant has also been engaged in "substantial activity"

within North Carolina in that she frequently visits friends and family who reside in the state. Defendant disputes these factual allegations, and contends that her only relative in the state is her sister, whom she has not visited since August 2015. Further, defendant argues that aside from a visit to North Carolina last year for a celebration, her contact with the state has been limited to drop offs and pickups of the minor children that are required under the custody order between the parties, and that she immediately either returns to Virginia or stays with her mother in South Carolina. Upon examining the diverging factual allegations offered by both plaintiff and defendant, the court recognizes that where there is a dispute among the facts, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 675 (4th Cir. 1989). The court further notes that given the reason stated above for finding jurisdiction in North Carolina under the "Long Arm Statute," analysis of additional grounds for jurisdiction in this state are unnecessary.

Under the second part of the two-party inquiry for establishing jurisdiction over a nonresident defendant, the court must decide whether assuming personal jurisdiction over the defendant would comport with the due process requirements of the Fourteenth Amendment. Wells Fargo, 193 N.C. App. at 39 (quoting Tom Togs Inc., 318 N.C. at 364). In making this assessment, the court will consider whether defendant has purposefully availed themselves of the forum state, whether the claim arises out of or relates to defendant's conduct within the state, and whether the exercise of personal jurisdiction is reasonable and fair under the due process clause of the Fourteenth Amendment. Grober, 686 F.3d at 1346. In the instant case, plaintiff contends that defendant is subject to personal jurisdiction under theories of both general and specific jurisdiction. Plaintiff also alleges that defendant has waived the defense of lack of general jurisdiction by

evincing her intent to refute and defend the merits of his defamation claim. As explained herein, the court finds that personal jurisdiction is appropriate in this matter.

### i. General Jurisdiction

A forum state may exercise general jurisdiction over a nonresident defendant where that party maintains "continuous and systematic contacts with a state." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446 (1952). Plaintiff argues that defendant has established "minimum contacts" with North Carolina and purposefully availed herself by engaging in significant activities and creating continuing obligations with residents of the state. In support, plaintiff points to the seven-year ongoing custody lawsuit with defendant, which plaintiff argues creates an expectation for the defendant that she can reasonably anticipate being hailed into court in North Carolina since she already has been and thus has the necessary continuing obligations with the state.

After reviewing the factual allegations presented by both parties, the court finds that personal jurisdiction in North Carolina would not violate the due process clause of the Fourteenth Amendment. As the Supreme Court has emphasized, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State" and "it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 474-75 (citing Hanson v. Denckla, 357 U.S. 235, 246 (1958)).

Here, defendant argues that such custody proceedings initiated by plaintiff against defendant would appear to be the kind of "unilateral activity of another party or a third person" that cannot satisfy due process. Id. at 475. However, although defendant's compliance with the custody proceedings enforced by North Carolina might alone not constitute a deliberate "act" by

which the defendant has purposefully availed herself of the state, given that she was the one to initiate the proceedings against plaintiff in 2011, the court finds defendant has indeed purposefully availed herself to the state of North Carolina. Id. at 475. The court acknowledges that the Supreme Court has held that a state's ability to govern the obligations of a defendant does not signify that the defendant has "purposefully avail(ed themselves) of the privilege of conducting activities within the forum state," and that to hold otherwise "strains reason." Shaffer v. Heitner, 433 U.S. 186, 216 (1977) (quoting Hanson, 357 U.S. at 253). However, the instant case can be distinguished from Shaffer, in that defendants in Shaffer had no connection to the State of Delaware aside from being shareholders to the organization that was incorporated there, whereas here, defendant on her own, initiated a lawsuit in North Carolina and thus created a continuing obligation between her and the state in which she has continued to receive protections and benefits from its custody laws. For these reasons, the court finds that defendant's ongoing custody litigation constitutes "continuing obligations" that are systematic enough to afford the court general jurisdiction finding defendant "at home" in the state of North Carolina. Goodyear, 564 U.S. at 919.

The court does, however, note that defendant did not waive her personal jurisdiction defense based on the discussion captured in the affidavit defendant submitted in this matter. In determining whether defendants waive their personal jurisdiction defense, it must be decided whether defendant's appearances and filings "amount to legal submission to the jurisdiction of the court, whether voluntary or not." Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 905 (6th Cir. 2006). The court notes that actions that give "plaintiff a reasonable expectation that [defendants] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking" will result in a waiver of a personal jurisdiction defense. Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston

Metropolex, P.A., 623 F. 3d 440, 443 (7th Cir. 2010).

Plaintiff argues that defendant's statements in her affidavit, which refer to plaintiff's relationship with parties' other daughter, represent attacks on his credibility and are misplaced given that the dispute was strictly over jurisdictional issues. Plaintiff points to other circuits and districts, where courts have found that similar conduct by a defendant constituted a waiver of a personal jurisdiction defense. See, e.g., Trust Co. Bank v. Tingen-Millford Drapery Co., Inc., 119 F.R.D. 21, 22 (E.D.N.C. 1987) (holding that a motion for an extension of time to answer can constitute an appearance by implication which is a waiver of personal jurisdiction, as "[a]n appearance by implication . . . can arise as a result of an objective manifestation of intent on the part of the defendant or counsel to defend the action"); see also Gerber v. Riordan, 649 F.3d. 514 (6th Cir. 2011) (finding that defendants' filing of a general appearance with the district court constituted a voluntary acceptance of that forum's jurisdiction, and thus waived the defendants' personal jurisdiction defense).

However, the instant case can be distinguished from those cited by the plaintiff in that defendant's counsel did not make a responsive pleading or file a general appearance to argue the merits of the case. Instead, they filed a special appearance to contest only the jurisdiction of the court. Additionally, defendant's statements in the affidavit should not be construed as an appearance by implication, since they do not convey a request to plaintiff's counsel for an extension to file an answer nor any motion which could be read as an intent to defend the suit on its merits. To interpret the commentary otherwise would require a level of speculation that is inappropriate at this stage. In short, the court finds that, since defendant filed a timely motion under Fed. R. Civ. P. 12(b)(2) to dismiss for lack of personal jurisdiction, and did not "[f]ail to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading," defendant has not

waived her right to a personal jurisdiction defense. See Fed. R. Civ. P. 12(h)(1).

## ii. Specific Jurisdiction

Plaintiff asserts that the court also has specific jurisdiction over defendant, in that the defendant has repeatedly made defamatory statements with the intent of influencing the parties' domestic dispute in Mecklenburg County, North Carolina. Plaintiff further alleges that many of the false, untruthful, and defamatory statements made by defendant, and which are the source of his intentional infliction of emotional distress claim, are based on events that occurred while both parties lived in North Carolina. Additionally, plaintiff contends that the "publication" of the statements injured his business and have impacted his business within the State of North Carolina. Thus, plaintiff argues that when taken as a whole, the defamatory statements and their injury to plaintiff's professional reputation in North Carolina, serve to establish specific jurisdiction over the defendant. For reasons explained herein, the court holds that specific jurisdiction is also appropriate here.

The court notes that "a defamatory statement made in due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice." C.D. Harman v. Belk, 165 N.C. App 819, 825 (2004) (quoting Jarman v. Offutt, 239 N.C. 468, 472 (1954)). See also Harris v. NCNB Nat'l Bank of N.C., 95 N.C. App. 669, 672 (1987). Thus, even if the statements were defamatory as alleged by plaintiff, they do not support the contention that they alone can be used as a basis for establishing jurisdiction in this case since such statements are privileged by absolute immunity.

The court also finds the North Carolina Supreme Court's holding in Saxon v. Smith, 125 N.C. App. 163, 170 (1997) (citing Keeton v. Hustler Magazine, Inc. 465 U.S. 770, 777 (1984)), to be instructive. There, the court held that libel and slander are "generally held to occur wherever

the offending material is circulated." Id. In the instant case, plaintiff contends that the "publication" occurred during a medical examination in Virginia when defendant made statements to medical professionals exclusively employed in Virginia. Thus, the event at issue here involves material that was "circulated" in Virginia, not North Carolina, but which "relates" to the custody litigation in North Carolina which as explained above, is evidence of defendant purposefully availing herself to the state's laws and protections. Thus, the said material can be said to "arise out of or relate to the defendant's contacts with the forum." Goodyear, 564 U.S. at 924 (quoting Helicopteros Nacionales, 466 U.S. at 414 n. 8).

Therefore, given that the controversy relates to the custody litigation representing defendant's contacts with North Carolina, the court concludes that specific jurisdiction is also appropriate here. Accordingly, the court finds that personal jurisdiction is not lacking in this case. To have defendant be subject to suit where the underlying cause of action did not occur, but where she does maintain continuous and systematic contacts and whereby the underlying cause if action is related to defendant's contacts with the forum, is both reasonable and fair under the due process clause of the Fourteenth Amendment.

**B.      Subject Matter Jurisdiction**

As noted earlier, defendant removed this case based on diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332. The court acknowledges the general rule that on a motion to remand, the burden of establishing federal subject matter jurisdiction rests on the party or parties seeking to preserve removal. Morales v. Showell Farms, Inc., 910 F. Supp. 244, 246 (M.D.N.C. 1995) (citing Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (M.D.N.C. 1995)). Thus, here defendant has the burden to prove that plaintiff's claim falls within the purview of this court and is permissible under the narrow limitations of removal jurisdiction.

The court also notes that diversity jurisdiction is determined based on the state of the pleadings at the time of removal. <u>Pinney v. Nokia, Inc.</u>, 402 F. 3d 430, 443 (4th Cir. 2005). As such, diversity jurisdiction in the instant case will be based on plaintiff's initial complaint filed in state court, as his amended complaint was filed subsequent to removal. The court agrees with the parties that they are completely diverse in that plaintiff is a citizen of North Carolina and defendant is a citizen of Virginia. As such, the court's analysis will focus on evaluating § 1332(a)'s requirement that the amount in controversy exceed $75,000 in order for diversity jurisdiction to be established.

Plaintiff here asserts his claim for remand pursuant to 28 U.S.C.A. § 1332(a), in which he argues that the amount in controversy is not in excess of $75,000, and thus, the court lacks subject matter jurisdiction over this matter. The court notes that a plaintiff in a removal action may not defeat diversity jurisdiction by filing a post-removal amendment which reduces the amount of damages sought by the complaint below the amount in controversy required by 28 U.S.C. § 1332(a). <u>Saint Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 294 (1938). However, as held by the court in <u>Griffin v. Holmes</u>, 843 F. Supp. 81 (E.D.N.C. 1993), a plaintiff may clarify the damages sought when state pleading requirements did not permit him to do so in the original complaint. Here, plaintiff alleges that state pleading Rule 8(a)(2) did not permit him to specify his damages any further than what he had in his motion to remand. Thus, he argues that his stipulation does not reduce the amount of damages previously sought but rather clarifies the damages requested in his initial complaint. Plaintiff also contends that his counsel has informed defendant's counsel subsequent to initiating the lawsuit that he was not currently seeking damages in excess of $75,000. Ex. 1 at 1. Plaintiff notes that his filing a Motion to Remand for lack of subject matter jurisdiction, filing an affidavit stipulating that the amount of controversy has been below $75,000 at all relevant times, his testimony under oath at deposition that his damages were below $75,000,

and his verification of answer to defendant's discovery that the amount in controversy is below $75,000, all support his position that the amount of controversy in this claim has not been satisfied.

In his deposition, plaintiff stipulates in his affidavit that the matter in controversy is less than $75,000, exclusive of interest and costs. See Affidavit of Robert Liesman, Doc. #13. Plaintiff contends that he is seeking $39,000 in compensatory damages and approximately $10,000 in punitive damages, which amounts to less than $50,000 in total awarded damages. (Ex. A. Interrog. 6.). Defendant, however, maintains that plaintiff's total compensatory damages are over $39,000 since his projection does not include attorney's fees, which are permissible under Missouri State Life Ins. Co. v. Jones, 290 U.S. 199 (1933), and is based on what defendant considers an arbitrary calculation of damages. Such a miscalculation, in culmination with a punitive award which could be twice the amount of compensatory damages, would put plaintiff's claim in excess of $75,000 and thus meet the statutory amount in controversy requirement. Defendant further argues that plaintiff's stipulated amount for compensatory damages failed to includes certain other damages, which he asked for in part of his complaint, and if added would certainly bring the amount to well over the $75,000 threshold. Lastly, defendant notes that under North Carolina General Statute § 1D-25, punitive damages can be the greater of $250,000 or three times compensatory damages.

Upon reviewing the factual allegations put forth by both parties, the court finds that plaintiff's attempt to convince the court that he is seeking less than $75,000 in damages falls short. Plaintiff's stipulation attempts to keep his action in state court while maintaining his ability to collect a large amount of damages. Other districts have found that, where stipulations are used, plaintiffs cannot recover a total amount of actual and punitive damages with respect to all claims exceeding the jurisdictional amount. See Thrift v. Ford Motor Credit Co., 2006 U.S. Dist. Lexis 20838. During plaintiff's deposition, plaintiff's counsel stated that it was plaintiff's position that,

when put in front of a jury, plaintiff "could ask for $1,000,000."(Exhibit "E" Dep. Pp. 152-153). Such language evinces the view that plaintiff indeed could collect damages in excess of $75,000 and thus meet the amount in controversy as required by the statute. The court is therefore not persuaded by plaintiff's claim that he is seeking less than $50,000 in damages.

The court notes that although there is no minimum award under the statute, the limits imposed are designed to set an absolute maximum punitive damages award against defendant and should not be interpreted to mean that the court is likely to award such an amount. Further, the court holds that although plaintiff could seek higher punitive damages, he has repeatedly insisted that it is not his intention to do so. In regards to the attorney's fees, the court finds the rulings by other federal courts on this matter to be persuasive and as such, holds that the decision in Missouri State Life Ins. Co. v. Jones applies only to cases whereby legal fees are recoverable under contract or statute. See Francis v. Allstate Ins. Co., 709 F.3d 362, 368 (4th Cir. 2013) (quoting 15-102 Moore's Federal Practice, Civil § 102.106(6)(a)) (holding that "generally, attorney's fees are not included in the amount in controversy calculation, but courts have created two exceptions to this rule: (1) if the fees are provided for by contract; or (2) if a statute mandates or allows payments of attorney's fees."); see also Saval v. BL Ltd., 710 F. 2d 1027, 1033 (4th Cir. 1983) (declining to include attorney's fees in the amount in controversy calculation recoverable as "costs"); Can-Dev, ULC v. SSTI Brewster Brampton, LLC, 2016 WL 8467196, at *4 n.5 (M.D.N.C. 2016) ("Given that this case is in an early stage of litigation and that the Complaint does not specify any damages, it would be too speculative to project that Plaintiff's attorneys' fees could satisfy the amount in controversy in this case") (citation omitted). Here, since there appears to be neither a contract among the parties, nor a pertinent North Carolina statute which expressly authorizes recovery of attorney's fees in defamation disputes, the court finds that the attorney's fees may not be included

in damages calculations.

That said, at this time the court finds that, based on plaintiff's testimony during the deposition and the potential for a large punitive damages award, the amount in controversy is met for the purposes of establishing subject matter jurisdiction. As both personal jurisdiction and subject matter jurisdiction are therefore proper in this court, the court will assess whether defendant's motion for a transfer of venue is warranted under § 1406.

### C. Change of Venue

Even where venue is appropriately found in this district, the court may transfer the case to another district, pursuant to § 1404(a). Within this district, motions to transfer venue are analyzed using the eleven Crockett factors noted above. While the moving party bears a heavy burden on a motion to transfer venue, Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 451 (W.D.N.C. 1989), a court's decision to grant a motion to transfer venue under 28 U.S.C. § 1404(a) is largely discretionary. 3A Composites USA, Inc. v. United Indus., Inc., No. 5:13CV83-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

#### 1. Initial Choice of Forum

The first Crockett factor is the plaintiff's initial choice of forum. In this case, the plaintiff initially chose the Western District of North Carolina as its preferred forum. Although the choice of forum by the Plaintiff is ordinarily given considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum. Hames v. Morton Salt, Inc., 3:11cv570-MOC-DSC, 2012 WL 1247201, at *2 (W.D.N.C. Apr. 13, 2012) (citing Parham v. Weave Corp., 323 F.Supp.2d 670, 674 (M.D.N.C. 2004)). Indeed, the weight given to the plaintiff's choice of forum is proportionate to the relation between the forum and the cause of action. Parham, 323 F.Supp. 2d at 674. Here, this factor weighs in favor of the plaintiff and his

desire to keep the case in this district, where he resides.

2. *Residence of each party*

In analyzing the second <u>Crockett</u> factor, the court examines the residence of each party. It is undisputed that the plaintiff is a resident of this district and the defendant is not. It appears that the defendant resides within the Virginia. Given that plaintiff is a resident of this district, the factor will weigh toward retaining the case in the Western District of North Carolina.

3. *The Relative Ease of Access and Proof and the Availability and Costs of Witnesses*

In examining the third and fourth <u>Crockett</u> factors, the court analyzes the relative ease and access to the evidence in the suit. Traditionally, "[t]he convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer … One strong argument against transfer is that the original forum will be the most convenient for the witnesses. And when transfer will better serve the convenience of the witnesses, the motion under Section 1404(a) is more likely to be granted." 15 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed.) (collecting cases).

The court notes that the party asserting witness inconvenience has the burden to proffer sufficient details respecting the witnesses and their potential testimony to determine the materiality of evidence and the degree of inconvenience. <u>Capital One Fin. Corp. v. Drive Fin. Servs., L.P.</u>, 434 F. Supp. 2d 367, 375-76 (E.D. Va. 2006).

This dispute arises out of an alleged defamatory statement made by defendant in Virginia, although the Court notes this dispute is closely related to an ongoing custody dispute in North Carolina. Witnesses to the alleged defamatory statements were medical professionals and the parties' daughter both of whom reside in Virginia. Meanwhile, the evidence of the alleged damage is in North Carolina, where plaintiff is a practicing podiatrist. The evidence in this case does not

reside in one district alone. These factors favor neither the defendant or the plaintiff because the burden would merely be shifted; therefore, this factor is neutral.

    4. *View by the Jury, Enforceability of a Judgement, and Relative Advantages/ Obstacles to Fair Trial*

    Taking three <u>Crockett</u> factors together, the court evaluates whether transfer affords the possibility of a view by the jury; allows for the enforceability of a judgment, if obtained; and balances the relative advantages and obstacles to a fair trial. As to the first two of these three factors, it is clear that a district court in Virginia can also enforce judgments and affords the parties the possibility of a jury trial, which would favor transfer on both factors.

    As to any relative obstacles or advantages for a fair trial, it is not necessary to probe whether this district or that of a district court in Virginia would provide one side or the other any "home field" advantage, as any advantage would go both ways. <u>See</u> <u>Rice v. Bellsouth Adver. & Pub. Corp.</u>, 240 F. Supp. 2d 526, 530 (W.D.N.C. 2002). The court therefore finds that this factor is neutral.

    5. *Practical Problems and Administrative Difficulty*

    Examining two <u>Crockett</u> factors together, the court evaluates the administrative difficulties of court congestion and practical problems affecting trial expediency and expense. First, there would no administrative difficulty in transferring the case to a district court in Virginia. This factor favors transfer.

    Second, with regard to practical problems, <u>Crockett</u> itself noted that motions to transfer are not to be granted merely to shift the inconvenience from one party to another. 751 F. Supp. at 95. With that noted, if this action were transferred, both parties would be required to retain local counsel, as either parties' counsel are licensed to practice in state or federal court in Virginia. This

factor favors not transferring.

6. *Interest in Localized Controversies Settled at Home and Avoidance of Conflict of Laws Issues.*

The two remaining <u>Crockett</u> factors involve the localized adjudication of dispute and avoidance of issues with conflicts of laws. Plaintiff is suing defendant for her alleged defamation through a North Carolina statute. North Carolina has a strong interest in this case, although the alleged defamation occurred in Virginia, the alleged damages occurred in North Carolina. In order to avoid conflict of law issues and in the interest of localized controversies being settled at home, these factors militate towards keeping this matter here.

7. *Conclusion*

While there may be some evidence that ease of access to proof may be better in Virginia, as well as more availability of compulsory process for attendance of plaintiff's witnesses, it does not outweigh the overall ease of access of proof, the relative advantages for a fair, easy, expeditious and inexpensive trial, and all the other <u>Crockett</u> factors. Ultimately, changing the venue to Virginia would merely change the burden from defendant's witnesses to plaintiff's. Therefore, the court cannot find that defendant has met their "particularly heavy burden" such that transfer is a viable course of action. <u>McDevitt & St. Co. v. Fid. & Deposit Co. of Maryland</u>, 737 F. Supp. 351, 353 (W.D.N.C. 1990). As such, the case will remain in this Court.

Ultimately, for the reasons stated herein, the court finds that it properly has jurisdiction over this matter and does not find transfer to be appropriate in this instance. Having thus considered defendant's motion and reviewing the pleadings, the court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss for Lack of

Jurisdiction and Alternative Motion to Change Venue (#11) is **DENIED.**

Signed: July 3, 2018

Max O. Cogburn Jr.
United States District Judge